UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| GREGORY A.M. BROWN,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>BRIAN A. BROWN, and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | 3:13-cv-00128-LRH-WGC<br><br>ORDER |

Before the court is Defendant Brian A. Brown's ("Defendant") Motion to Dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue (#5[1]). Plaintiff Gregory A.M. Brown ("Plaintiff") opposed the motion (#13), to which Defendant has replied (#14).

**I.    Facts and Procedural History**

Plaintiff and Defendant are brothers. In December 1999, the two formed a company now known as manageStar.com, Inc. ("manageStar"). Around that time, Defendant moved from New York to California to help develop the company with his brother, who was already living in California. Though Plaintiff was to be the Chief Executive Officer of manageStar, Plaintiff and Defendant allegedly orally agreed at a meeting in California to equally split all their future earnings (the "50/50 Partnership Agreement").

This agreement allegedly extended to all the companies they would eventually form including Sub-One Technology, Inc. ("Sub-One"); Joyent, Inc. ("Joyent"); The Air Machine, LLC ("Air Machine"); International Patent Development Group, LLC ("IPDG"); and WallClaw Anchors, LLC ("WallClaw"). Joyent and manageStar are incorporated in Delaware, Sub-One and

---

[1]Refers to the court's docket entry number.

1  Air Machine are incorporated in California, and IPDG and WallClaw are incorporated in Nevada.
2  All companies had their principal places of business in California until 2010, when Plaintiff
3  moved from California to Incline Village, Nevada. At that time, WallClaw's and IPDG's
4  principal places of business moved with him to Incline Village, Nevada.

5  The 50/50 Partnership Agreement allowed the two brothers to split up and focus on
6  developing their preferred companies. In 2009, Defendant was mainly managing Joyent when it
7  experienced significant growth. Defendant then allegedly withheld some of Plaintiff's income
8  from Joyent and refused to compensate Plaintiff's expenses in developing WallClaw, which
9  Plaintiff had been managing.

10  On January 31, 2013, Plaintiff filed a complaint in the Second Judicial District Court of
11  Nevada against Defendant alleging breach of the 50/50 Partnership Agreement, as well as other
12  related torts (#1). On March 14, 2013, based on diversity jurisdiction, the case was removed to
13  federal district court. Thereafter, on March 21, 2013, Defendant filed the instant Motion to
14  Dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the Northern
15  District of California (#5).

16  **II.   Legal Standard**

17  A court may dismiss a complaint for lack of personal jurisdiction over the defendant. Fed.
18  R. Civ. P. 12(b)(2). Where a defendant challenges the court's personal jurisdiction, the plaintiff
19  bears the burden of demonstrating the court has jurisdiction over the defendant. *Schwarzenegger*
20  *v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where, as here, the court receives
21  only written materials, the plaintiff need only make a *prima facie* showing through its pleadings
22  and affidavits that the exercise of personal jurisdiction over the defendant is proper. *Id.* Although
23  a plaintiff cannot simply rest on the bare allegations of its complaint, the uncontroverted
24  allegations in the plaintiff's complaint are taken as true, and conflicts between facts contained in
25  the parties' affidavits are resolved in the plaintiff's favor. *Id.*

26  To establish personal jurisdiction, the plaintiff must show the forum's long-arm statute
27  confers personal jurisdiction over the out-of-state defendants and show the exercise of
28  jurisdiction does not violate federal constitutional principles of due process. *Haisten v. Grass*

2

*Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986). Nevada's long-arm statute permits the exercise of jurisdiction on any basis consistent with federal due process. Nev. Rev. Stat. § 14.065(1).

Personal jurisdiction consistent with federal due process requires the defendant to have sufficient "minimum contacts with Nevada 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction over a nonresident defendant may be either general or specific. *Helicopteros Nationales de Columbia S.A. v. Hall*, 466 U.S. 408, 414 nn. 8-9 (1984). A court may exercise general jurisdiction over a defendant if the defendant's activities in the forum are either "substantial" or "continuous and systematic" such that the defendant's activities approach a "physical presence" in the forum, even if those contacts did not give rise to the action. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). These necessary contacts for general jurisdiction constitute a fairly high standard. *See, e.g.*, *Helicopteros* 466 U.S. at 416 (general jurisdiction denied over foreign corporation where the corporation negotiated the contract in the forum, sent several employees to forum for training, accepted checks from a bank in the forum, and purchased equipment from the forum); *Cubbage v. Merchent*, 744 F.2d 665, 667–68 (9th Cir. 1984) (general jurisdiction over doctors denied where the doctors had multiple patients in the forum, used the forum's medical insurance system, and had a telephone directory listing in that forum); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330–31 (9th Cir. 1984) (general jurisdiction over defendants denied where defendants visited and purchased from the forum several times, solicited contract in forum with choice of forum's law provision, and substantial communication with the forum).

In contrast, for a court to exercise specific jurisdiction, the action must arise out of the defendant's forum-related activities. *Bancroft*, 223 F.3d at 1086. In the Ninth Circuit, courts use a three-part test to determine whether the exercise of specific jurisdiction relating to a defendant's forum-related activities satisfies constitutional due process: (1) the nonresident must purposefully direct his activities or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the

1  forum; (2) the claim must be one which arises out of, or relates to, the defendant's forum-related
2  activities; and (3) the exercise of jurisdiction must be reasonable. *Brayton Purcell LLP v.*
3  *Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).

**III.  Discussion**

    **A. Personal Jurisdiction**

        **i. Forum Selection Clause**

7      Initially, in his opposition to Defendant's motion, Plaintiff argues the WallClaw and
8  IPDG Operating Agreements contain a forum selection clause, selecting Reno, Nevada as the
9  only appropriate forum to resolve disputes and that Defendant agreed to personal jurisdiction in
10 Nevada. However, the WallClaw and IPDG Operating Agreements do not have forum selection
11 clauses. Though the agreements contain provisions for Nevada law to govern (*see* Pl.'s Decl.
12 (#13), Ex. 3, § 17.5; *id.*, Ex. 8, § 7(e); *id.*, Ex. 11, § 17.5), these choice-of-law clauses are not
13 equivalent to forum selection clauses. The only relevant clauses select Reno, Nevada as the
14 appropriate forum for arbitration, not for court proceedings. Thus, Defendant did not consent to
15 personal jurisdiction in Nevada based on the Operating Agreements of Wallclaw or IPDG.

        **ii. General Jurisdiction**

17     In his motion, Defendant argues that his contacts with Nevada are neither continuous and
18 systematic, nor substantial enough to approximate a physical presence in the state, and thereby
19 insufficient to establish general personal jurisdiction. *See* (#5). The court agrees. Defendant's
20 contacts with Nevada are too insignificant and too infrequent to meet the high standard for
21 general jurisdiction. *See Bancroft & Masters, Inc.*, 223 F.3d at 1086. Though Defendant is
22 involved with WallClaw and IPDG, both Nevada corporations, his activity with the two has been
23 greatly limited. Defendant travels to Nevada for business only once or twice per year. These
24 visits are significantly less than the physical presence of the defendant in *Helicopteros* whose
25 limited travel to the forum state was deemed insufficient to establish general jurisdiction. *See*
26 *Helicopteros*, 466 U.S. at 410–11. Further, Defendant's mailing addresses, telephone numbers,
27 and communications in Nevada are analogous to the telephone directory listings in *Cubbage* and
28 the communications in *Gates Learjet*, which were found insufficient for general jurisdiction. *See*

1  *Cubbage*, 744 F.2d at 667; *Gates Learjet*, 743 F.2d at 1329. In sum, Defendant's contacts are less
2  than or equal to other instances where courts have denied general jurisdiction. Therefore, the
3  court finds that there is no general personal jurisdiction over Defendant in this action.

### iii. Specific Jurisdiction

5  Defendant also argues that he is not subject to specific personal jurisdiction because: (1)
6  he did not purposefully avail himself of conducting activities in Nevada; (2) Plaintiff's claim
7  does not arise out of his Nevada-related activities; and (3) it would be unreasonable to exercise
8  jurisdiction over him. *Brayton*, 606 F.3d at 1128. The court shall address each argument below.

9  First, purposeful availment. To determine whether a defendant satisfies the purposeful
10 availment requirement, the Ninth Circuit uses a three-part test: "the defendant allegedly [must]
11 have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm
12 that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue*
13 *Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (quoting
14 *Schwarzenegger*, 374 F.3d at 803). The Ninth Circuit has clarified that for an act to be "expressly
15 aimed at the forum state," it is sufficient for the defendant to allegedly engage in "wrongful
16 conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."
17 *Bancroft*, 223 F.3d at 1087.

18 Here, Plaintiff alleges that Defendant intentionally withheld portions of Plaintiff's income
19 under the 50/50 Partnership Agreement and that this wrongful conduct was targeted at Plaintiff, a
20 Nevada resident. Further, Plaintiff alleges that Defendant knew Plaintiff would suffer in Nevada.
21 Thus, the court finds that Defendant's conduct satisfies the purposeful availment requirement.

22 Because the court has found that Defendant purposefully availed himself to Nevada, the
23 court must now determine whether Plaintiff's claims arise out of the Defendant's forum-related
24 activities. *See Brayton*, 606 F.3d at 1128. The relevant inquiry, then, is whether Plaintiff's claims
25 against Defendant would have arisen *but for* Defendant's contacts with Nevada. *Harris Rutsky &*
26 *Co***.** *Ins. Serv., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131–32 (9th Cir. 2003) (citing
27 *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

28 Here, the only contacts Defendant has with Nevada that would impact Plaintiff's claims

for breach of contract are Defendant's contacts to WallClaw and IPDG as Nevada corporations. However, even supposing these companies were never formed, Plaintiff's claim for breach of the 50/50 Partnership Agreement would still exist because the 50/50 Partnership Agreement was created before any of the brothers' companies were incorporated in Nevada. Further, Plaintiff's main claim for damages stems from the breach of the 50/50 Partnership Agreement as it applies to Joyent, which is not incorporated in Nevada. Therefore, the court finds Plaintiff's claims do not arise out of Defendant's Nevada-related activities. Thus, even if it were otherwise reasonable to so exercise jurisdiction, this court lacks personal jurisdiction over Defendant.

**B. Transfer of Venue**

Although the court has found that there is no personal jurisdiction over the Defendant in this action, rather than dismiss this action in total, the court finds that the appropriate resolution of Defendants' motion (#5) is to transfer venue to the Norther District of California.

Federal district courts have power to transfer a civil action to a different venue either under 28 U.S.C. § 1404(a) or order 28 U.S.C. § 1406(a) . Under § 1404(a), a court may, for party and witness convenience and in the interests of justice, transfer any civil action from a proper venue to any other proper venue. Further, Personal jurisdiction is not necessary for a court to transfer venue pursuant to 28 U.S.C. § 1404. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465–66 (1962); *Reed v. Brown*, 623 F. Supp. 342, 346 (D. Nev. 1985) ("[a] district court has the power to transfer a case in which it lacks personal jurisdiction, as long as the considerations set forth in § 1404(a) have been satisfied."); *see also* 14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3827 (3d ed. 2007 & Supp. 2013).

To determine whether to transfer venue under § 1404, courts consider the following factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

In this case, the alleged 50/50 Partnership Agreement was negotiated and executed in California.[2] Although Nevada law governs the IPDG and WallClaw Operating Agreements, there is no evidence to suggest Nevada law governs any of the other companies' Operating Agreements or the 50/50 Partnership Agreement. Further, Defendant has greater California contacts relating to Plaintiff's cause of action for breach of contract than he has Nevada contacts and has conceded to personal jurisdiction in California. Further, Plaintiff himself also has a significant number of contacts in California. Finally, the differences in the costs of litigation between Nevada and California appear to be minimal as many witnesses and a significant amount of the evidence are in California. Therefore, the court finds that transfer of this action is appropriate under 28 U.S.C. § 1404. Accordingly, the court shall grant Defendants' motion and transfer this action to the Northern District of California.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, to Transfer to the Northern District of California (#5) is GRANTED. The clerk of court shall TRANSFER this action, 3:13-cv-00128-LRH-WGC, to the United States District Court for the Northern District of California.

IT IS SO ORDERED.

DATED this 12th day of July, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[2] Nowhere does it specify whether the 50/50 Partnership Agreement was negotiated and executed in the Northern District of California. However, it is a reasonable assumption because both Plaintiff and Defendant lived in the Northern District at the time and all of their companies originally had their principal places of business in the Northern District. Def.'s Mot. Decl. ¶¶ 9, 13, 19, 26, 34, 40, 44.